UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE DUNBAR,<br>           Plaintiff,<br>    v.<br>K. COFFMAN, et al.,<br>           Defendants. | Case No. 24-cv-08898-AMO (PR)<br><br>**ORDER OF PARTIAL DISMISSAL WITH LEAVE TO AMEND; AND SERVING COGNIZABLE CLAIM** |

## I. INTRODUCTION

Plaintiff Eddie Dunbar, a state prisoner currently incarcerated at Kern Valley State Prison, has filed a civil rights action pursuant to 42 U.S.C. § 1983, representing himself and alleging constitutional violations that took place at Pelican Bay State Prison ("PBSP"), where he was previously incarcerated. Dkt. 1. His motion for leave to proceed *in forma pauperis* will be granted in a separate Order. Dkt. 2.

Dunbar names as Defendants the following PBSP employees: Correctional Officer K. Coffman; Correctional Lieutenant J. Sweet; and Correctional Captain L. Deters. Dkt. 1 at 2.[1] Dunbar seeks monetary and punitive damages. *Id.* at 3.

The Court now conducts its initial review of the complaint pursuant to 28 U.S.C. § 1915A. Venue is proper in this judicial district because most of the events giving rise to Dunbar's claims in his complaint are alleged to have occurred at PBSP, which is located here. *See* 28 U.S.C. § 1391(b).

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Dunbar.

## II. DISCUSSION

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* at § 1915A(b)(1), (2). Pleadings submitted by self-represented plaintiffs must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, liability may be imposed on an individual defendant if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if they engage in an affirmative act, participates in another's affirmative act or fails to perform an act which they are legally required to undertake, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (finding that a prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or

2

1  directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*,
2  880 F.2d 1040, 1045 (9th Cir. 1989). "'Supervisory liability is imposed against a supervisory
3  official in [their] individual capacity for [their] own culpable action or inaction in the training,
4  supervision, or control of [their] subordinates, for [their] acquiescence in the constitutional
5  deprivations of which the complaint is made, or for conduct that showed a reckless or callous
6  indifference to the rights of others.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d
7  1175, 1183 (9th Cir. 2007) (citations omitted). Under no circumstances is there respondent
8  superior liability under section 1983. *Taylor*, 880 F.2d at 1045.

Finally, Federal Rules of Civil Procedure Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, Rule 8(e) requires that each averment of a pleading be "simple, concise, and direct." *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"). While the federal rules require brevity in pleading, a complaint nevertheless must be sufficient to give the defendants "fair notice" of the claim and the "grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation and citation omitted). A complaint that fails to state the specific acts of the defendant that violated the plaintiff's rights fails to meet the notice requirements of Rule 8(a). *See Hutchinson v. United States*, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982).

### B. Background

In his complaint, Dunbar states that on or about April 26, 2022, he was being released from the administrative segregation unit back to general population when Defendant Coffman stated that Dunbar "had drugs concealed in his intestines, allegedly observed through an x-ray scan." Dkt. 1 at 5.

Defendant Sweet "confronted [Dunbar] in a very small holding cell and asked [him] if he was hiding drugs in his intestines." *Id*. Dunbar states he denied hiding drugs in his intestines, and he claimed that such an accusation was a result of "ongoing harassment" "due to [Dunbar] being continuously oppressed, harassed, and provoked since arriving at [PBSP], and retaliation for filing multiple grievances for misconduct and prison conditions." *Id*. Defendant Sweet then informed

3

Dunbar that Defendant Coffman "would conduct another x-ray scan on [Dunbar] and [he] would be placed back in segregation under contraband watch if the x-ray [confirmed it] or if the officials assumed [he] had drugs in his intestines." *Id*. Dunbar claims that he experienced "extreme duress," and he "let the officers know he had suicidal ideations." *Id.* Dunbar alleges Defendants Coffman and Sweet "threatened and prepared to use force on [Dunbar] to extract [him] from the small holding cell in order to place [him] back in segregation under contraband watch." *Id.*

Dunbar alleges that "[a]s a direct result of Defendant K. Coffman's false claim," he was "placed on contraband watch and confined to a small cell without a bed until after 8 p.m. daily, for two or three days." *Id*. Dunbar claims he was "forced to remain with his undergarments and clothing taped to his body, creating significant discomfort and indignity." *Id.* at 5-6.

Dunbar also avers that during the time he was placed on contraband watch, he was also "undergoing a religious fast for Ramadan, which the prison acknowledged and facilitated." *Id.* at 6. However, unnamed prison officials required Dunbar "to consume food to produce the three bowel movements mandated under contraband watch procedures, violating his religious rights." *Id*. Dunbar alleges he was "handcuffed and forced to sit on a handicap chair to defecate in the presence of several officials, which caused him extreme humiliation and distress." *Id*. Dunbar also alleges that "[d]espite [his] compliance, [unnamed] officials sometimes claimed the fecal matter was insufficient and refused to count it, prolonging his confinement and psychological suffering." *Id*.

Dunbar alleges that "[u]pon further examination, it was determined that [he] had no drugs or contraband in his intestines and the accusation was unfounded." *Id*. Dunbar claims that Defendants "acted with deliberate indifference and reckless disregard for [his] constitutional rights by falsely accusing [him] without any legitimate basis." *Id*. Dunbar claims that "Defendants J. Sweet and L. Deters authorized the contraband watch without legitimate basis, and did not provide [Dunbar] with any evidence or proper documentation, such as x-ray images . . . ." *Id.*

As a result of Defendants' actions, Dunbar alleges he "suffered physical, emotional, and psychological harm, as well as damage to his religious practices and dignity." *Id*.

4

**C.     Legal Claims**

Dunbar alleges the present action "arises under 42 U.S.C. § 1983 and the Eighth, Fourteenth, and Fourth Amendments to the United States Constitution." Dkt. 1 at 4.

### 1.     Eighth Amendment

Plaintiff alleges that the conditions that he experienced while he was on contraband watch amounted to cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 5-6. Specifically, Dunbar alleges that Defendants violated his rights by "act[ing] with deliberate indifference and reckless disregard for [his] constitutional rights" and falsely accused him of hiding drugs in his intestines "without any legitimate basis." *Id.* at 6.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment imposes duties on prison officials to provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *see id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *see id.* (citing *Wilson*, 501 U.S. at 297).

The requisite state of mind to establish an Eighth Amendment violation in prison-conditions case is one of "deliberate indifference." *See Wilson*, 501 U.S. at 302-03. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, that is, the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837.

In his complaint, Dunbar states the actions of Defendants Coffman, Sweet and Deters that led to him being placed on contraband watch violated his Eighth Amendment rights because he was "forced to remain with his undergarments and clothes taped to his body" and "was handcuffed and forced to sit on a handicap chair to defecate in the presence of several officials." Dkt. 1 at 6. Dunbar also alleges that certain unnamed officials "sometimes claimed the fecal matter was

5

1  insufficient and refused to count it," which prolonged Dunbar's contraband watch. *Id*. Finally,

2  Dunbar alleges that upon further examination, no drugs or contraband were found in his intestines.

3  *Id*. Liberally construed, Dunbar's allegations—regarding the conditions of his confinement while

4  he was placed on contraband watch—state a cognizable Eighth Amendment claim against

5  Defendants Coffman, Sweet, and Deters.

### 2.  Fourteenth Amendment Right to Due Process

In his complaint, Dunbar does not allege a specific violation of his Fourteenth Amendment right. Dkt. 1 at 1-6. After Dunbar's contraband watch, prison officials "determined that [he] had no drugs or contraband in his intestines" and did not issue any disciplinary violations against him. *Id*. at 6.

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence or causes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 484, 487 (1995). The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. at 564-67. Due process also requires that there be "some evidence" to support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445 at 454. The Due Process Clause only requires that prisoners be afforded those procedures mandated by *Wolff* and its progeny; it does not require that a prison comply with its own, more generous procedures. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994).

As mentioned above, Dunbar does not allege a specific violation of his Fourteenth Amendment rights, and no disciplinary violation was issued to him. Dkt. 1 at 1-6. Thus, he alleges no facts to establish liability for a due process violation on the part of Defendants.

Accordingly, his Fourteenth Amendment claim is **DISMISSED** with leave to amend if he can do so in good faith.

### 3. First Amendment

#### a. Retaliation

> Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir.2003), and to "pursue civil rights litigation in the courts," *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir.1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield. . . . Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2008) (footnotes omitted).

Dunbar's complaint fails to state a claim for retaliation. *See* Dkt. 1 at 4-6. Dunbar lodges a conclusory allegation that Defendant Sweet's actions of confronting him and asking him if he was hiding drugs in his intestines represented "ongoing harassment" resulting from his "being continuously oppressed, harassed, and provoked since arriving at [PBSP] and retaliated upon his filing multiple grievances for misconduct and prison conditions." Dkt. 1 at 5. Dunbar does not advance any facts to suggest that the allegedly retaliatory conduct by Defendants was directly in response to Dunbar engaging in protected activity, specifically filing a grievance or a lawsuit or threatening to file a grievance or a lawsuit. Moreover, the complaint does not allege any facts that would suggest a chilling effect on Dunbar.

Accordingly, Dunbar's retaliation claim is **DISMISSED** with leave to amend if he can in good faith allege facts, subject to proof, that cure these pleading deficiencies.

If Dunbar chooses to amend his retaliation claim against Defendant Sweet, he must proffer enough facts to state a plausible claim that Defendant Sweet took some adverse action against Dunbar, that such action was a result of Dunbar's engaging in protected activity, and that such action chilled his exercise of his First Amendment rights and did not reasonably advance a legitimate correctional goal.

7

### b. Religious Rights

The First Amendment right to the free exercise of religion is violated where a defendant burdens the practice of a prisoner's religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" *Id*. at 737 (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *See id*. The mandates of a religion are not merely what is minimally required of adherents of a religion but include that which "the individual human being perceives to be the requirement of the transhuman Spirit to whom he or she gives allegiance." *Peterson v. Minidoka County School Dist.*, 118 F.3d 1351, 1357 (9th Cir. 1997). A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Dunbar claims unnamed prison officials barred him from participating in Ramadan because he was required to break his religious fast when he was forced to "consume food to produce three bowel movements mandated under contraband watch procedures." Dkt. 1 at 6. Dunbar presents no specific allegations related to such a claim against any named Defendant other than stating they were responsible for putting him on the contraband watch. Thus, his free exercise of religion claim is **DISMISSED** with leave to amend. He must identify the specific defendants who denied his religious rights and describe their actions. For Dunbar to state a cognizable First Amendment claim, he must also show that the alleged actions interfered with conduct mandated by his faith and were not reasonably related to legitimate penological interests. *See Mayweathers v. Newland*, 258 F.3d 930, 937-38 (9th Cir. 2001) (finding policy of disciplining inmates for missing work assignment to attend Jumu'ah (Sabbath) services interfered with conduct mandated by Muslim faith and was not reasonably related to legitimate penological interests).

**III.  CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Dunbar states a cognizable Eighth Amendment claim against Defendants Coffman, Sweet, and Deters.

2. The Court **DISMISSES** with leave to amend Dunbar's Fourteenth and First Amendment claims.  If Dunbar chooses to file an amended complaint, he must file the amended complaint within **twenty-eight (28) days** of the date of this Order.  The amended complaint must include the caption and civil case number used in this Order, Case No. 24-cv-8898-AMO (PR) and the words "AMENDED COMPLAINT" on the first page.  He must use the Court's complaint form and answer all the questions on the form in order for the action to proceed.  Because an amended complaint completely replaces the previous complaints, Dunbar must include in his amended complaint *all* the claims he wishes to present, including any amended claims (i.e., his Fourteenth and First Amendment claims) as well as the Eighth Amendment claim against Defendants Coffman, Sweet, and Deters, which the Court has already found cognizable.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Dunbar may not incorporate material from the prior complaint by reference.  Failure to file an amended complaint in accordance with this Order in the time provided will result in the following: (1) the dismissal of his Fourteenth and First Amendment claims; (2) the initial complaint (Dkt. 1) remaining the operative complaint; and (3) this action proceeding in accordance with this Order.

3. The following defendant(s) shall be served at PBSP:

   a. **Correctional Officer K. Coffman;**

   b. **Correctional Lieutenant J. Sweet; and**

   c. **Correctional Captain L. Deters.**

Service on the listed defendant(s) shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") e-service pilot program for civil rights cases from prisoners in CDCR custody.  In accordance with the program, the Clerk of the Court is directed to serve on CDCR via email the following documents: the operative complaint, this order of service, a CDCR Report of E-Service Waiver form and a summons.  The Clerk shall serve by mail a copy

of this order on the plaintiff.

No later than 40 days after service of this order via email on CDCR, CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office, which, within twenty-one (21) days, shall file with the court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form. The Clerk shall provide to the USMS the completed USM-205 form and copies of this order, summons, and operative complaint for service upon each defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

4. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

    a. No later than **sixty (60) days** from the date their answer is due, the defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[2] notice so that the plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under this Circuit's case law, in the rare event that

---

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

10

a failure to exhaust is clear on the face of the complaint, the defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the complaint, the defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to the plaintiff shows a failure to exhaust, the defendants are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants shall so inform the Court at least **seven (7) days** prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on the plaintiff.

   b.  The plaintiff's opposition to the dispositive motion shall be filed with the Court and served on the defendants no later than **twenty-eight (28) days** after the date on which the defendants' motion is filed.

   c.  The plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,

11

as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

The plaintiff also is advised that—in the rare event that the defendants argue that the failure to exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents—documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse the defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

      d.    The defendants shall file a reply brief no later than **fourteen (14) days** after the date the plaintiff's opposition is filed.

      e.    The summary judgment motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

5. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to the defendants to

depose the plaintiff and any other necessary witnesses confined in prison.

6. All communications by the plaintiff with the Court must be served on the defendants' counsel by mailing a true copy of the document to them.

7. It is the plaintiff's responsibility to prosecute this case. The plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a self-represented party whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the self-represented party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the self-represented party indicating a current address. *See* L.R. 3-11(b).

8. Future requests for extensions of time must be submitted at least **seven (7) days** prior to the expiration of a deadline, as required by Section D.2 of the Court's Standing Order for Civil Cases.

9. The Clerk shall include a copy of a blank complaint form with a copy of this Order to the plaintiff.

**IT IS SO ORDERED.**

Dated:   June 17, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

13