UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDDIE DUNBAR,

Plaintiff,

v.

K. COFFMAN, et al.,

Defendants.

Case No. 24-cv-08898-AMO (PR)

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND REQUEST FOR SANCTIONS; AND DENYING HIS MOTION FOR PRELIMINARY INJUNCTION & TRO**

Re: Dkt. Nos. 14, 15

## I.     INTRODUCTION

Plaintiff Eddie Dunbar, who is self-represented and currently incarcerated at Kern Valley State Prison ("KVSP"), has filed a complaint under 42 U.S.C. § 1983, alleging constitutional violations at Pelican Bay State Prison ("PBSP") where he was formerly incarcerated. The claims in Dunbar's complaint stem from allegations that, following an unsubstantiated suspicion of drug concealment, Defendants PBSP Officers K. Coffman, J. Sweet, and L. Deters subjected Dunbar to prolonged contraband watch conditions that were carried out with deliberate indifference to his constitutional rights and in violation of his First Amendment right to observe a religious fast. *See* Dkt. 1 at 4-6.

Before the Court are Dunbar's motion to compel discovery responses and request for sanctions, as well as his motion for a preliminary injunction and temporary restraining order ("TRO") seeking to prevent his transfer from his current location, KVSP, back to PBSP. Dkts. 14, 15. Defendants have opposed these motions. Dkts. 17, 18.

For the reasons set forth below, his motions are **DENIED**.

## II.     BACKGROUND

On or around April 26, 2022, as Dunbar was being released from administrative segregation to general population at PBSP, Defendant Coffman alleged that, based on an x-ray

scan, Dunbar had drugs concealed in his intestines.  Dkt. 1 at 5.  As a result, Dunbar was placed on contraband watch and confined to a small cell without a bed until after 8:00 PM daily for two to three days.  *Id.*  During this period, Dunbar was required to eat food to produce three bowel movements in compliance with contraband watch procedures, which he alleges violated his religious rights as he is a Muslim and was observing a Ramadan fast.  *Id.* at 5-6.  Dunbar was handcuffed and required to defecate in the presence of PBSP officials, causing him significant distress, and these officials allegedly refused to count his bowel movements as sufficient, prolonging his confinement.  *Id.*  Upon further examination, PBSP officials found no drugs or contraband.  *Id.*  Dunbar alleges that Defendants acted with deliberate indifference and reckless disregard for his constitutional rights.  *Id.*

On November 7, 2025, Dunbar filed the instant motion to compel Defendants to provide responses to his first set of requests for the production of documents, requests for admissions, and interrogatories, asserting that he had served his discovery requests on July 1, 2025 but received no response.  Dkt. 14 at 2.

On November 24, 2025, Dunbar filed a motion for preliminary injunction and TRO to prevent the California Department of Corrections and Rehabilitation ("CDCR") from transferring him from KVSP to PBSP.  Dkt. 15.  The record shows that Dunbar was placed in KVSP's Restrictive Housing Unit ("RHU") on May 13, 2025 after being found to have committed battery on a peace officer.  *See* Dkt. 18 at 7.  The classification committee determined that Dunbar's conduct and history required placement at a Level IV/180 institution.  *Id.*  Although the committee considered Dunbar's preferences and initially recommended transfer to either Salinas Valley State Prison or California State Prison - Sacramento, neither institution had the requisite program availability or housing capacity.  *Id.*  Dunbar was accordingly designated for transfer to PBSP.  *Id.* Dunbar alleges that transferring him to PBSP would put him in imminent danger of irreparable harm due to possible retaliation from PBSP staff and would disrupt access to his medical and mental health treatment.  Dkt. 15 at 1, 3-4.

**III.    MOTION TO COMPEL DISCOVERY AND REQUEST FOR SANCTIONS**

It is not an effective or appropriate use of the Court's limited resources to oversee all

aspects of discovery. Thus, before filing a motion to compel, the moving party must first attempt to resolve the dispute informally with the opposing party. It is only when the parties are unable to resolve the dispute after making a good faith effort to do so should they seek the Court's intervention. *See* Fed. R. Civ. P. 37(a)(2)(B); N.D. Cal. Local Rule 37-1.

Here, the record makes clear that Dunbar's motion to compel discovery should be denied as moot. Dunbar filed his motion on November 7, 2025, asserting that he had served his discovery requests on July 1, 2025 but received no response. Dkt. 14 at 2. However, pursuant to Dunbar's legal mail logs and his August 14, 2025 meet and confer letter, he had served his requests directly to the California Attorney General in *San Francisco* rather than to Defendants' counsel in *San Diego*. *Id.* at 25-28. Thus, the record shows that Defendants' counsel never received those requests and was unaware that they had been sent. *Id.* at 28. Defendants accordingly asked Dunbar to serve his requests to the address listed for service. *Id.* On September 23, 2025, Defendants were properly served in San Diego. Dkt. 17 at 5. On October 24, 2025, Defendants timely responded, which was within thirty days of service. *Id.* at 7; *see* Fed. R. Civ. P. 6, 33, 34, and 36.

Because Dunbar's legal mail logs show his motion to compel was mailed on November 5, 2025—the same day he received mail from the Attorney General's Office—he likely received Defendants' responses shortly *after* filing his motion to compel. Dkt. 17 at 9. Thus, the record shows that Defendants timely responded once they were properly served, and that Dunbar has since received those responses. Therefore, the Court **DENIES** as moot Dunbar's motion to compel discovery. Dkt. 14. Dunbar's request for sanctions is likewise **DENIED** as moot, and, in any event, there is no basis for sanctions. Dkt. 14.

## IV.    MOTION FOR PRELIMINARY INJUNCTION AND TRO

### A.    Jurisdiction

As a threshold matter, the Court lacks personal jurisdiction to grant the requested relief Dunbar seeks because he seeks a preliminary injunction and TRO against a non-party, the CDCR.

An injunction is binding only on parties to the action, their officers, agents, servants, employees and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P.

3

65(d). In order to enforce an injunction against an entity, the district court must have personal jurisdiction over that entity. *In re Estate of Ferdinand Marcos*, 94 F.3d 539, 545 (9th Cir. 1996). The court should not issue an injunction that it cannot enforce. *Id.*

As mentioned above, Dunbar requests the Court to prevent the CDCR from transferring him from KVSP to PBSP. Dkt. 15 at 4. Authority over inmate housing assignments rests with CDCR as an institution, exercised through the classification committee process. *See* Cal. Code Regs. tit. 15, § 3375, *et seq.*; Cal Pen. Code § 5068; CDCR Dep't Ops. Manual 15000.10. Because the CDCR has not been named as a defendant or served in this action, the Court has no jurisdiction over the CDCR to issue, much less enforce, a restraining order.

In light of this Court's lack of jurisdiction to enjoin the CDCR from transferring Dunbar to PBSP, the motion for a preliminary injunction and TRO is **DENIED**.

### B.    Merits

In any event, even if the Court had jurisdiction to enjoin the CDCR from transferring Dunbar to PBSP, he has failed to establish all the factors under *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), to warrant a preliminary injunction and TRO.

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer, et al.*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted). The standard for issuing a TRO is similar to that required for a preliminary injunction. *See Los Angeles Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J., dissenting). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Irreparable harm must be likely, not merely possible. *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). Where the court concludes the movant has failed to show a likelihood of success on the merits, the court, in its discretion, need not consider whether the movant would suffer irreparable injury. *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009).

In actions brought by prisoners, the Prison Litigation Reform Act ("PLRA") further limits

United States District Court
Northern District of California

4

the scope of available injunctive relief. Before a court may grant a prisoner's request for an injunction, the PLRA requires that the court find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). Courts must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* Consistent with these principles, inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another." *Olim v. Wakinekona*, 461 U.S. 238, 244 (1983).

### 1. Likelihood of Success on the Merits

Dunbar contends in a conclusory manner that he is likely to succeed on the merits because he has served discovery requests asking Defendants to admit they violated CDCR policy and asserts "documented evidence will supplement the claims." Dkt. 15 at 3. The service of discovery requests does not establish a likelihood of success on the merits particularly where, as here, Defendants denied all allegations of CDCR policy violation in their responses. However, even if Defendants had admitted policy violations, such an admission would not carry Dunbar's burden, as violations of "state departmental regulations do not establish a federal constitutional violation." *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009). Dunbar's theoretical assertion—that documentary evidence will eventually materialize—is insufficient. He fails to demonstrate that success on his claims is *likely*—rather than just theoretically possible—and, therefore, he fails to satisfy the first *Winter* factor. Accordingly, Dunbar's motion may be denied on this basis alone.

### 2. Irreparable Harm

Dunbar alleges that transfer to PBSP would place him in imminent danger of "physical assault, physiological harm, and potential death" at the hands of PBSP staff and that it would disrupt his ongoing mental health. Dkt. 15 at 3-4. To obtain a preliminary injunction, a plaintiff must show a presently existing, actual threat of harm; injury need not be certain, but it must be more than speculative. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997). To meet Federal Rule of Civil

United States District Court
Northern District of California

United States District Court
Northern District of California

Procedure 65's "irreparable injury" requirement, Dunbar must do more than simply allege imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Dunbar to allege "specific facts in an affidavit or a verified complaint [which] clearly show" a credible threat of "immediate and irreparable injury, loss or damage." Fed R. Civ. P. 65(b)(A).

Dunbar has not met this standard. His assertions regarding retaliation by PBSP staff are vague and conclusory, unsupported by specific facts or evidence and are insufficient to establish a likelihood of irreparable harm. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts"). Dunbar's speculative concerns regarding the transfer leading to the "sever[ing] [of] access to ongoing medical and mental health treatment" are similarly unsubstantiated. *See* Dkt. 15 at 3. He provides no information about the nature of such treatment, whether comparable services are unavailable at PBSP, or why any disruption would be irreparable. Dunbar has therefore failed to satisfy the second *Winter* factor.

Because Dunbar would need to establish all four *Winter* factors but cannot establish those discussed, his motion for a preliminary injunction and TRO is **DENIED**. Dkt. 15.

## V.    CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.    Dunbar's motion to compel discovery and request for sanctions are **DENIED** as moot. Dkt. 14.

2.    Dunbar's motion for a preliminary injunction and TRO is **DENIED**. Dkt. 15.

**IT IS SO ORDERED.**

Dated:  7/2/2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

6