United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDDIE DUNBAR,

Plaintiff,

v.

K. COFFMAN, et al.,

Defendants.

Case No. 24-cv-08898-AMO (PR)

**ORDER DISMISSING CLAIMS FOR FAILURE TO AMEND; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 19, 26

## I. INTRODUCTION

Plaintiff Eddie Dunbar, who is self-represented and currently incarcerated at Kern Valley State Prison ("KVSP"), filed a complaint under 42 U.S.C. § 1983, alleging constitutional violations at Pelican Bay State Prison ("PBSP") where he was formerly incarcerated in 2022. *See* Dkt. 1. Dunbar's claims stem from allegations that, following an unsubstantiated suspicion of drug concealment, prison officials violated his constitutional rights when they placed him on contraband surveillance watch ("CSW") at PBSP. *Id.* at 5. Defendants are PBSP Correctional Officer K. Coffman, and PBSP Correctional Lieutenant J. Sweet, and retired former PBSP Correctional Captain L. Deters. *Id.* at 4-5. Dunbar seeks compensatory and punitive damages. *Id.* at 3.

On June 17, 2025, the Court screened Dunbar's complaint under 28 U.S.C. § 1915A, found that he stated a cognizable Eighth Amendment claim against Defendants, and ordered service of process on them. Dkt. 4 at 5, 9. The Court dismissed Dunbar's Fourteenth and First Amendment claims with leave to amend. *Id.* To date, Dunbar has not amended these claims, and the time permitted has long since passed. Accordingly, these claims are **DISMISSED** without prejudice. The original complaint remains the sole operative claim before the Court.

On November 26, 2025, after Dunbar moved for a temporary restraining order ("TRO") to

prevent his transfer to another institution, the Court directed Defendants to respond and set a briefing schedule. Dkt. 16 at 1-2.

On July 2, 2026, the Court denied Dunbar's motion to compel discovery and request for sanctions as moot, and separately denied his motion for a preliminary injunction and TRO for lack of personal jurisdiction over the non-party CDCR and, alternatively, for failure to satisfy the *Winter* factors.[1] Dkt. 30 at 3-6.

Before the Court are the parties' pending cross-motions for summary judgment. Dkts. 19, 26. Defendants Coffman, Sweet, and Deters move for summary judgment on Dunbar's Eighth Amendment conditions-of-confinement claim, arguing that: (1) they were not deliberately indifferent to Dunbar's health and safety in violation of the Eighth Amendment; (2) as to Defendants Coffman and Sweet, Dunbar cannot establish the requisite personal participation in the alleged constitutional violation; (3) Dunbar has not provided evidence of any physical injury because of Defendants' actions; and (4) Defendants are entitled to qualified immunity. Dkt. 19. Dunbar has filed his opposition, and Defendants have filed their reply. Dkts. 22, 23.

Dunbar has also filed his own cross-motion for summary judgment, *see* Dkt. 26, to which Defendants filed an opposition, *see* Dkt. 28.

For the reasons outlined below, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Dunbar's cross-motion for summary judgment.

## II. FACTUAL BACKGROUND

On April 26, 2022, at approximately 12:09 p.m., Dunbar was being released from PBSP's administrative segregation unit back to general population. Dkt. 1 at 5; Coffman Decl. ¶ 3. Prior to his return, Defendant Coffman conducted a low-dose body scan of Dunbar's person, a routine screening procedure PBSP conducts following activities where contraband smuggling is likely. Deters Decl. ¶ 2; Coffman Decl. ¶ 2. Defendant Coffman observed what he stated appeared to be contraband concealed in Dunbar's intestines. Dkt. 1 at 5; Coffman Decl. ¶ 3. Dunbar was then

[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (A preliminary injunction requires the movant to show a likelihood of success on the merits, a likelihood of irreparable harm absent relief, that the balance of equities favors the movant, and that an injunction serves the public interest.).

confronted by Defendant Sweet in a small holding cell and asked whether he was hiding drugs in his intestines. Dkt. 1 at 5. Dunbar denied the accusation and told Defendants that their actions were the product of ongoing harassment and retaliation for grievances he had filed regarding prison conditions and staff misconduct. *Id.* Defendant Sweet informed Dunbar that Defendant Coffman would conduct a second scan and that Dunbar would be placed in segregation under contraband watch if the scan confirmed, or prison officials otherwise believed, that he was concealing contraband. *Id.* Dunbar alleges he told officers he was experiencing suicidal ideation because of the encounter, and that Defendants Coffman and Sweet threatened to use force to remove him from the holding cell. *Id.*

Defendant Sweet, who was the on-duty watch commander on April 26, 2022, reviewed the scan, and determined it was sufficiently suggestive of contraband to warrant a CSW request. Deters Decl. ¶ 4. Under PBSP policy, a CSW request must be made by the on-duty watch commander and approved by a staff member holding the rank of captain or above. *Id.* ¶ 2; Ex. A, Dep't Ops. Manual §§ 52050.23.2- 52050.23.3. Defendant Sweet approved Dunbar's placement on CSW at 4:06 p.m. that same day. *Id.* ¶ 4, Ex. B.

The parties dispute the length of Dunbar's confinement on CSW. Dunbar alleges he was confined to a small cell without a bed until after 8:00 p.m. daily, for a period of two or three days. Dkt. 1 at 5. Defendants, by contrast, contend that Dunbar remained on CSW for a single overnight period, from his placement approximately from 4:06 p.m. on April 26, 2022, until 12:20 p.m. on April 27, 2022, when he had produced three bowel movements free of contraband, consistent with PBSP policy that CSW continues for up to seventy-two hours or until three qualifying bowel movements occur. Deters Decl. ¶ 2, Ex. A, Dep't Ops. Manual § 52050.23.8; *Id.* ¶¶ 5-6, Ex. D.

As to conditions during CSW, Dunbar alleges his undergarments and clothing were taped to his body, causing significant discomfort and indignity. Dkt. 1 at 5-6. CSW protocol requires that an inmate's clothing be taped at the hem and shirt cuff to prevent access to body cavities, and that inmates may be placed in handcuffs and waist chains with hand-isolation devices, with the level of restraint determined by the inmate's circumstances. Dkt. 19-2, Ex. A, Dep't Ops. Manual §§ 52050.23.3-52050.23.4. Defendants contend that waist restraints were applied only when

Dunbar attempted to have a bowel movement. Deters Decl. ¶¶ 4-5, Exs. B-C. Defendants further assert that Dunbar's cell temperature was monitored and logged every two hours, ranging from 71-72 degrees Fahrenheit, that his activity was logged every fifteen minutes by non-party prison staff, that he was provided food and drinking liquids at regular intervals, and that he received a mattress and blanket at approximately 8:00 p.m. for sleeping. Dkt. 1; Deters Decl. ¶ 5, Ex. C.

Dunbar further alleges he was "handcuffed and forced to sit on a handicap chair to defecate in the presence of several prison officials, which caused extreme humiliation and distress," and that the prison officials sometimes claimed his fecal matter was insufficient and refused to count it, prolonging his confinement. Dkt. 1 at 6. Dunbar was evaluated by medical and mental health staff on multiple occasions while on CSW. *See id*. Dunbar alleges that a subsequent examination determined he had no drugs or contraband in his intestines and that the accusation against him was unfounded. Dkt. 1 at 6.

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

On December 18, 2025, Defendants Coffman, Sweet, and Deters filed a motion for summary judgment on Dunbar's Eighth Amendment challenge to the conditions of his placement on CSW at PBSP in April 2022. Dkt. 19 at 1. Defendants contend that Dunbar's CSW placement for approximately 24 hours—during which he was monitored every fifteen minutes, provided food, water, a mattress and blanket in the evening, and multiple medical and mental health evaluations—falls within the range of conditions courts have repeatedly held do not rise to the level of an Eighth Amendment violation. *Id.* at 2-3, 6-7; Deters Decl. ¶¶ 2-6. Defendants further contend that, because Dunbar's claims challenge "measured practices and sanctions" adopted for institutional security rather than ordinary conditions of confinement, the heightened "malicious and sadistic" intent standard applies, and that under either that standard or the ordinary deliberate indifference standard, the undisputed facts show no culpable mental state on Defendants' part. *Id.* at 7-11. Defendants also maintain that Dunbar cannot establish a causal connection between the named Defendants and the conditions he experienced, since the placement decision was made by Defendant Deters pursuant to CDCR policy, and that Dunbar's claim independently fails for lack

of evidence of any physical injury because of Defendants' actions. *Id.* at 11-13. Finally, Defendants argue that, even if a constitutional violation were found, they are entitled to qualified immunity because their conduct conformed to Department Operations Manual §§ 52050.23-52050.23.8, and because Ninth Circuit precedent has consistently found qualified immunity for CSW placements under comparable or harsher conditions. *Id.* at 13-16.

In his January 23, 2026 opposition, Dunbar does not address the substantive merits of Defendants' motion, and he does not dispute any of the factual or legal arguments raised therein. Dkt. 22 at 1-2. Instead, Dunbar contends that Defendants failed to cooperate in discovery, asserting that he served interrogatories, requests for admission, and requests for production of documents on Defendants on July 1, 2025, and again on September 17, 2025, after Defendants' counsel represented that the initial requests had not been received. *Id.* at 3, Exs. A-D2.[2] Dunbar states that, as of the filing of his opposition, he had not received any discovery responses from Defendants. *Id.* at 3; Dunbar Decl. at 7.[3] On this basis, Dunbar argues that Defendants' motion is procedurally improper under Federal Rule of Civil Procedure 56(d), and requests that the Court deny the motion in its entirety, or in the alternative, defer ruling and permit additional time for discovery, exclude any evidence not produced in discovery, and grant such other relief as the Court deems just. *Id.* at 5-6. Dunbar also separately objects, under Rule 56(c)(2), to Defendants' reliance on an image purportedly depicting contraband in Dunbar's intestines, asserting the image was never produced in discovery or made part of the record. *Id.* at 4. Relatedly, Dunbar contends that under Rules 56(c) and 56(e) all of Defendants' cited evidence relying on the image is

---

[2] Dunbar attaches six exhibits in support of this contention to his opposition. *See* Dkt. 22, Exs. A-D2. Exhibit A is a proof of service reflecting Dunbar's July 1, 2025 service of interrogatories, requests for admission, and requests for production of documents on Defendants. Exhibit B is an August 14, 2025 letter from Dunbar to Defendants' attorney offering a thirty-day extension in lieu of a motion for sanctions. Exhibit C is Defendants' attorney's September 9, 2025 letter responding to Dunbar's request and asking him to re-serve copies of the discovery requests. Exhibit D1 is a proof of service reflecting re-service on September 17, 2025, and Exhibit D2 is KVSP's mail record corroborating that service. Exhibit E is Defendants' notice of deposition to Dunbar.

[3] Dunbar's declaration is not divided into numbered paragraphs but consists of a single continuous passage. *See* Dkt. 22 at 7-8. The Court therefore cites the declaration by page number rather than by paragraph. The statement referenced above appears within the first seven sentences of the declaration. *See id.* at 7.

United States District Court
Northern District of California

unsupported, unauthenticated, and must be disregarded. *Id.* at 4-5. Finally, Dunbar argues that Defendants' motion was not made in good faith and requests that the Court impose sanctions under Rule 56(h), based on the same alleged discovery failures and Defendants' asserted reliance on unproduced evidence. *Id.* at 5.

Defendants filed a reply on February 9, 2026. Defendants argue that Dunbar's opposition fails to address the merits of Defendants' motion and instead relies solely on the disputed contention that Defendants did not respond to his discovery requests. Dkt. 23 at 1-2. Defendants represent that they timely served discovery responses on October 24, 2025, and, after Dunbar continued to assert non-receipt, re-served those responses a second time by mail on January 8, 2026, and a third time by hand-delivery through CDCR staff on January 30, 2026. *Id.* at 2; Sheps Decl. ¶¶ 2-3, Exs. A-B. Defendants contend that because their motion rests on legal arguments that would entitle them to summary judgment even accepting Dunbar's factual allegations as true, no further fact discovery was necessary for Dunbar to oppose the motion on the merits, and Dunbar has not shown otherwise as required under Rule 56(d). *Id.* at 3-4. Defendants further argue that a party's failure to respond to a summary judgment motion does not entitle the movant to default judgment, but that Rule 56 does permit the Court to treat a properly supported fact as undisputed where the nonmovant fails to controvert it. *Id.* at 3 (citing *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013)). Because Dunbar has not come forward with competent evidence disputing any fact material to Defendants' showing, Defendants contend the Court should treat their evidence as undisputed under Rule 56(e) and grant summary judgment in their favor. *Id.* at 4-5 (citing *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986)).

**1. Threshold Matters Raised in Opposition to Summary Judgment**

Before evaluating the merits of Defendants' motion for summary judgment, the Court first resolves four threshold procedural and evidentiary arguments raised in Dunbar's opposition: (a) his request under Federal Rule of Civil Procedure 56(d) to deny or defer resolution of the motion for summary judgment pending further discovery; (b) his objection under Rule 56(c)(2) to Defendants' reliance on the body-scan image; (c) his broader contention under Rules 56(c) and 56(e) that Defendants' cited evidence must be disregarded as unsupported; and (d) his request

under Rule 56(h) that the Court sanction Defendants for bringing the motion for summary judgment in bad faith. Dkt. 22. The Court addresses these matters before the merits because each, if resolved in Dunbar's favor, would either preclude the Court from reaching the merits of the motion for summary judgment (the Rule 56(d) request) or would narrow the evidentiary record properly before the Court on summary judgment (the remaining threshold matters).

**a. Rule 56(d) Request**

A party seeking relief under Rule 56(d) must show, typically by affidavit, "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (quoting *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). The burden is on the party seeking a Rule 56(d) continuance "to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Atay v. County of Maui*, 842 F.3d 688, 698 (9th Cir. 2016); *see also Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). A bare assertion that discovery is incomplete, without identifying what specific facts additional discovery would produce or how those facts would preclude summary judgment, does not satisfy Rule 56(d). *Family Home*, 525 F.3d at 827.

Dunbar's Rule 56(d) declaration identifies the discovery requests he served and disputes whether Defendants timely responded, but it does not identify what specific facts he expects further discovery to yield or explain how those facts would controvert Defendants' showing. Dkt. 22 at 3, Dunbar Decl. ¶¶ 1-7. Dunbar makes no showing that any particular evidence exists or that it would allow him to withstand summary judgment; his generalized assertion that Defendants have not responded to his discovery requests is insufficient to show that granting him more time would result in his being able to successfully oppose the motion. *See Atay*, 842 F.3d at 698. This omission is independently sufficient to deny the request. *See Family Home*, 525 F.3d at 827. Further, Defendants evidence that they served discovery responses on October 24, 2025. Dkt. 23 at 2; Sheps Decl. ¶¶ 2-3, Exs. A-B. And after Dunbar represented in a January 7, 2026 filing that he had never received them, Defendants re-served those responses by mail on January 8, 2026, and

again by hand-delivery through CDCR staff on January 30, 2026, which was prior to Dunbar filing the instant opposition. *Id.* Accordingly, Dunbar's Rule 56(d) request is therefore **DENIED**.

**b. Evidentiary Objections Under Rules 56(c) and 56(e)**

Dunbar raises two related evidentiary arguments concerning the body-scan image Defendants reference in their motion. First, he objects under Rule 56(c)(2) that the image was never produced in discovery and is not properly part of the record. Dkt. 22 at 4. Rule 56(c)(2) permits a party to object that material cited to support a fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Second, and more broadly, Dunbar contends under Rule 56(c) and Rule 56(e) that all of Defendants' cited evidence relying on the image is unsupported, unauthenticated, and must be disregarded in its entirety. Dkt. 22 at 4-5.

The Court need not resolve either objection to decide the present motion for summary judgment. Defendant Coffman's testimony that the body scan appeared to him to show contraband is independent, personal-knowledge testimony, competent under Rule 56(c)(4), regardless of whether the image itself has been produced or authenticated. Coffman Decl. ¶¶ 2-3. Because the Court need not, and does not, rely on the image, Dunbar's objection under Rule 56(c)(2) is **OVERRULED AS MOOT**. Further, because Dunbar's broader arguments under Rule 56(c) and Rule 56(e) was based on his Rule 56(c)(2) challenge being sustained, they are also **OVERRULED AS MOOT**.

**c. Rule 56(h) Request for Sanctions**

Finally, Dunbar asks the Court to find that Defendants' motion for summary judgment "is not made in good faith" and to impose sanctions under Rule 56(h). Dkt. 22 at 5. Rule 56(h) authorizes sanctions only where the Court is "satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay," and permits the Court to order payment of the resulting reasonable expenses, including attorney's fees, and to hold the offending party or attorney in contempt or subject to other appropriate sanctions. Fed. R. Civ. P. 56(h).

Dunbar does not dispute Defendants' account that discovery responses were served on October 24, 2025, and re-served twice more, by mail and then by hand-delivery through CDCR staff once Dunbar asserted he had not received them. The account is corroborated by Attorney

Sheps and the accompanying proofs of service. Dkt. 23 at 2-3; Sheps Decl. ¶¶ 2-3, Exs. A-B. A finding of bad faith under Rule 56(h) requires more than a showing that discovery was contentious or delayed. See Fed. R. Civ. Pro. 56(h). Instead, such a showing requires some affirmative indication that a specific declaration was submitted knowing it to be false or for the purpose of delay. *Id.* Here, Dunbar has identified no such declaration. Because Dunbar has not made the showing Rule 56(h) requires, his request for sanctions is **DENIED**.

Having resolved these threshold matters, the Court now turns to the merits of Defendants' motion for summary judgment.

### 2. Legal Standard for Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact for trial lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party, and "draw[s] all justifiable inferences" in its favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248) (alteration in original). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *City of Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as

United States District Court
Northern District of California

issue" will not suffice. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *City of Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

In support of the motion for summary judgment, Defendants have presented various exhibits as well as some of their own declarations (Defendants Coffman and Deters) and a declaration from their attorney, Deputy Attorney General Ari Sheps. *See* Dkts. 19-1 to 19-3. Meanwhile, Dunbar has filed his verified complaint and opposition as well as attached exhibits. *See* Dkt. 1 at 3; Dkt. 22 at 8. The Court construes Dunbar's filings as affidavits under Rule 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). Rule 56(e) authorizes the Court, where a party fails to properly address another party's assertion of fact as required by Rule 56(c), to consider that fact undisputed for purposes of the motion and to grant summary judgment if the movant is otherwise entitled to it. Fed. R. Civ. P. 56(e)(2)-(3); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

**3. Eighth Amendment Claim**

The Eighth Amendment protects prisoners from inhumane conditions of confinement and requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To show an Eighth Amendment violation stemming from a prison official's failure to protect inmates from dangerous conditions at the prison, a plaintiff must meet two requirements. *See Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, the "prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims, is one of "deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw that inference. *See id.* The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731-32 (9th Cir. 2000) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 127 (2007). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *See Farmer*, 511 U.S. at 835; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The Court addresses the first prong: whether the conditions Dunbar describes were objectively serious enough to implicate the Eighth Amendment.

Courts considering Eighth Amendment challenges to CSW placements have consistently found no constitutional violation, either because the alleged deprivation was not objectively serious enough or because the officials involved were not shown to have acted with deliberate indifference. *See, e.g.*, *Jihad v. Wright*, 124 F.3d 204 (7th Cir. 1997) (holding that three days' confinement to dry cell, during which prisoner could not wash his hands and was denied personal hygiene items, did not violate Eighth Amendment where confinement served legitimate penological interest); *Stewart v. Wright*, 101 F.3d 704 (7th Cir. 1996) (holding that three-day confinement to dry cell without toilet paper, toothbrush, or toothpaste, in "filthy roach-infested cell," did not violate Eighth Amendment).

Dunbar has not come forward with evidence disputing the circumstances of his CSW placement or otherwise controverting Defendants' showing on either *Farmer* prong. *See* Dkt. 22. During Dunbar's CSW placement, prison officials did as follows: (1) provided Dunbar with shelter, food, drinking water, clothing, and medical attention throughout the CSW period; (2) checked on him every fifteen minutes; monitored that his cell temperature was kept at 71-72 degrees Fahrenheit; and (3) offered him a mattress and blanket in the evening as well as a chair during the day. *See* Deters Decl. ¶ 5, Ex. C. Dunbar was in CSW placement for approximately 24 hours. *Id.* Dunbar alleges in his complaint that he was held for "two or three days," and testified at his deposition that he was held for "three days . . . [t]hree, four, something like that." Dkt. 1 at 5; *see* Dkt. 19-1, Sheps Decl. ¶ 3, Ex. E. The Court need not resolve this discrepancy, because

United States District Court
Northern District of California

even accepting Dunbar's version, the Ninth Circuit has concluded that a several-day CSW placement of the kind alleged does not violate the Eighth Amendment. *See Chappell v. Mandeville*, 706 F.3d 1052, 1057 n.4. (9th Cir. 2013). In *Chappell*, the Ninth Circuit found that the defendants were entitled to qualified immunity because the law was not clearly established at the time (in 2002) that the CSW conditions imposed on the inmate violated the Eighth Amendment. *Id.* at 1057. The conditions in *Chappell* were similar to those in the instant action: a small cell; 24-hour observation and illumination; fecal searches; a plastic "toilet chair" for bowel movements and urinating; two pairs of underwear; taping of clothes; waist chains; and handcuffs. *Id.* at 1055-56. However, in some respects, the conditions in *Chappell* were worse, for example: the prisoner was chained to a bed with no mattress; he had to "eat like a dog" because his hands were not released from restraints; and the temperature was "very high." *See id.* Even under these harsher conditions lasting for six days, the Ninth Circuit found that a reasonable official would not have known that such conditions would violate the prisoner's constitutional rights. *See id.* at 1062. Here, even under Dunbar's account of his CSW placement's duration, the conditions he describes are less severe than those upheld by the Ninth Circuit in *Chappell*, and thus no reasonable fact-finder could conclude that the conditions in which Dunbar was held were objectively serious enough to violate the Eighth Amendment . *See Estelle*, 429 U.S. at 104.

Because the objectiveness prong is not satisfied, Defendants are entitled to summary judgment on Dunbar's Eighth Amendment claim. *See Farmer*, 511 U.S. at 834.[4]

**B. Plaintiff's Cross-Motion for Summary Judgment**

On February 9, 2026, Dunbar moved for summary judgment against Defendants Coffman, Sweet, and Deters on his Eighth Amendment claim. Dkt. 26 at 1-14.

Dunbar argues that Defendants acted with deliberate indifference in placing him on CSW because they lacked corroborating medical evidence, disregarded his repeated denials that he possessed contraband, and proceeded despite awareness of his deteriorating mental state and

[4] Because the Court concludes that Defendants are entitled to summary judgment on Dunbar's Eighth Amendment claim because his detention was not objectively serious, it need not address Defendants' alternative basis for summary judgment.

United States District Court
Northern District of California

suicidal ideation, which he contends satisfies both the objective and subjective prongs of an Eighth Amendment violation under *Farmer*. *Id.* at 7-8. He attributes distinct conduct to each Defendant for purposes of personal liability: Defendant Coffman "initiated and reaffirmed the false basis for CSW"; Defendant Sweet "threatened CSW, ignored [Dunbar]'s denials, and authorized action"; and Defendant Deters "approved CSW despite lack of evidence and known mental health risk." *Id.* at 8. Dunbar argues Defendants are not entitled to qualified immunity because the right to be free from "punitive, medically unjustified, psychological harmful confinement was clearly established" and that no reasonable officer could have believed the conduct was lawful. *Id.* As to physical injury, Dunbar argues that "significant physical discomfort" satisfies the physical injury requirement of the Prison Litigation Reform Act ("PLRA") regardless of its extent. *Id.* Dunbar requests that the Court grant summary judgment in his favor, find Defendants liable under section 1983, and reserve the question of damages for further proceedings. *Id.* at 9.

Dunbar's cross-motion fails on multiple independent grounds. His Eighth Amendment claim fails for the reasons set out above, which forecloses judgment in his favor on the same claim against Defendants Coffman and Deters. *See supra* DISCUSSION Part III.A.3. As to Defendant Sweet, Dunbar's own unverified complaint and declaration are insufficient to establish personal participation without genuine dispute, leaving neither side entitled to judgment on that issue. Finally, Dunbar's PLRA argument misstates the governing standard: the Ninth Circuit requires more than *de minimis* physical injury to sustain a claim for mental or emotional injury, *Oliver v. Keller*, 289 F.3d 623, 628-29 (9th Cir. 2002), and Dunbar identifies none. For these reasons, Dunbar's cross-motion for summary judgment is **DENIED**. Dkt. 26.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. As mentioned above, the previously Court dismissed Dunbar's Fourteenth and First Amendment claims with leave to amend. *See* Dkt. 4 at 5, 9. Because Dunbar failed to amend within the time permitted and he still has not amended, to date, the Fourteenth and First Amendment claims are **DISMISSED** without prejudice.

2. The following threshold matters have been ruled on as follows: (a) Dunbar's Rule

56(d) request is **DENIED**; (b) his objections under Rule 56(c) and Rule 56(e) are **OVERRULED**; and (c) his request for sanctions under Rule 56(h) is **DENIED**.

3. The Court **GRANTS** Defendants' motion for summary judgment. Dkt. 19.

4. The Court **DENIES** Dunbar's cross-motion for summary judgment. Dkt. 26.

5. The Clerk of the Court shall terminate all pending motions as moot and close the file.

**IT IS SO ORDERED.**

Dated: September 25, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**